J-S06042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.B. | : | |
| | : | |
| Appellant | : | No. 389 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 14, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001786-2017

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: MARCH 31, 2021**

D.B.[1] appeals from the judgment of sentence imposed following his jury conviction in the Court of Common Pleas of Philadelphia County (trial court) of attempted rape of a child, involuntary deviate sexual intercourse with a child, unlawful contact with a minor, endangering the welfare of a child, corruption of a minor, indecent assault of a person less than thirteen years of age and aggravated indecent assault of a child.[2] We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Initials are used to denote the names of most of the individuals throughout this Memorandum to protect the identity of the minor children involved. **See** Superior Court I.O.P. 424(A).

[2] 18 Pa.C.S. §§ 901(a), 3121(c), 3123(b), 6318(a)(1), 4304(a)(1), 6301(a)(1)(ii), 3126(a)(7) and 3125(b).

**I.**

**A.**

This case arises from D.B.'s sexual abuse of S.J.C. when she was eleven years old. S.J.C. is the oldest child of D.B.'s then-girlfriend, B.J. (Mother), who moved into D.B.'s home with her five children in North Philadelphia in May 2016. (***See*** N.T. Trial, 10/02/18, at 34-35, 39, 65). S.J.C.'s sister, A.J.C., is one year younger than S.J.C. and is also implicated in the abuse. (***See id.*** at 34). During the relevant time period, Mother worked the night shift at Target and left the children in D.B.'s care. (***See id.*** at 38).

At D.B.'s October 2018 jury trial, S.J.C. testified that the abuse began in the fall or winter of 2016. (***See id.*** at 76-77).[3] During the first incident, D.B. kissed S.J.C. on the mouth while they watched a movie with Mother, who had fallen asleep. (***See id.*** at 39-40). D.B. then called S.J.C. to his bedroom alone while Mother was at work and her siblings were asleep and he touched her breasts, butt and vagina. (***See id.*** at 41-44). As the abuse progressed, D.B. began to remove both of their clothing during the episodes. (***See id.*** at 42, 45). On at least one occasion, he moved his penis up and down on S.J.C.'s vagina and ejaculated into a towel. (***See id.*** at 46-47). D.B. forced S.J.C. to

---

[3] S.J.C. was thirteen years old and was living with her maternal grandmother, L.C., at the time of trial. (***See*** N.T. Trial, 10/02/18, at 6, 34).

perform oral sex on him and told her he would hurt her sisters if she told anyone about the abuse. (*See id*. at 49-50).

At one point, S.J.C. told Mother that D.B. was touching her inappropriately. (*See id.* at 51). After Mother spoke to D.B about this, the abuse stopped only temporarily. (*See id.*). However, during 2016, D.B. looked in on A.J.C. while she showered. (*See id.* at 57).[4]

On January 9, 2017, as S.J.C. and A.J.C. walked together to school, D.B. drove up to them, put a Butterfinger candy in S.J.C.'s pocket and drove away. (*See id.* at 52, 77). The girls threw the candy and became visibly upset. (*See id.* at 52-53). S.J.C. was taken to the principal's office and she disclosed the abuse to school counselor Dr. Christina Green-Lee "because it started to get too much for [her]." (*Id.* at 53). S.J.C. felt "like a weight lifted off [her] chest" and she and her siblings immediately moved in with L.C. (Grandmother). (*Id.* at 54).

On cross-examination, S.J.C. testified that before her family moved in with D.B., he would sometimes hit her when she disagreed with or disobeyed him. (*See id.* at 64). She did not want to live with D.B. even before the sexual abuse started. (*See id.* at 68-69). When Grandmother took her to the hospital for an examination relating to her allegations, S.J.C. would not remove her clothing. (*See id.* at 85-86). On redirect examination, S.J.C.

---

[4] D.B. was charged in a separate case for the allegations relating to A.J.C.

explained that she did not want the doctors to look at her private area because she did not want anyone to touch her. (**See id.** at 88).

A.J.C. testified that when she was ten years old, D.B. came into the bathroom while she was naked in the shower and opened the shower curtain to look at her. (**See id.** at 97-98, 100).[5] She closed the curtain and told Mother and S.J.C. about the incident the next day. (**See id.** at 102-03). Mother yelled at D.B. and he did not look at A.J.C. in the shower again. (**See id.** at 103).

---

[5] Prior to trial, the court granted the Commonwealth's motion *in limine* seeking admission of other acts evidence in the form of A.J.C.'s testimony pursuant to Pennsylvania Rule of Evidence 404(b)(2). Rule 404(b) provides:

**(b) Crimes, Wrongs or Other Acts.**

**(1) Prohibited Uses***.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses***.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

The notes of testimony from the motion *in limine* are not a part of the certified record. However, it is apparent from the record before us that the trial court admitted the evidence to show a common plan and it issued a cautionary instruction to the jury limiting its use.

Grandmother testified that when she arrived at the Special Victims Unit to speak with her granddaughters, S.J.C. was pale and tearful and she looked tired and sad. (**See id**. at 129-30). S.J.C. reluctantly told Grandmother about the abuse and when she asked about intercourse, S.J.C. "told me that this man tried to put his penis in her butt and white stuff came out. . . . She told me that he used a green towel to wipe the white stuff off the top of his penis and he threw this green towel onto the floor." (**Id.** at 131). A.J.C. was trembling and very upset upon learning the extent of the abuse towards her sister. (**See id.** at 132). Grandmother explained regarding the lack of examination at the hospital that "S.J.C. just wasn't having anybody touching her or taking her clothes off and [the sisters] became quite hysterical to the point where they said we'll wait[.]" (**Id.** at 133).

Dr. Green-Lee described S.J.C.'s demeaner as very upset and in a daze when she disclosed the abuse. (**See** N.T. Trial, 10/03/18, at 6-8). S.J.C. was also limping and appeared to be in pain. (**See id.** at 7-8). She started to cry and stated that her mother's boyfriend had been touching her breasts and vagina and that "he penetrated her vagina with his fingers . . . and humped her vagina with his genitalia[.]" (**Id.** at 10).

**B.**

The jury found D.B. guilty of the above-listed offenses on October 4, 2018. On December 14, 2018, the trial court sentenced him to an aggregate

term of not less than seventeen and one-half nor more than thirty-five years' incarceration, followed by four years of probation. D.B. timely appealed.

On May 16, 2019, trial counsel filed a concise statement of errors complained of on appeal raising two claims challenging the sufficiency and weight of the evidence. *See* Pa.R.A.P. 1925(b). The trial court filed an opinion addressing these claims on May 31, 2019. *See* Pa.R.A.P. 1925(a). This Court dismissed D.B.'s appeal on December 4, 2019, for counsel's failure to file a brief. We then reinstated the appeal *sua sponte*, ordered the trial court to appoint new counsel and granted counsel's request to supplement the Rule 1925(b) statement. D.B. filed a supplemental statement on February 28, 2020, in which he reiterated and elaborated on the previously raised sufficiency and weight claims. On October 27, 2020, this Court denied counsel's application for remand to file an additional supplemental statement without prejudice to re-raising the issue before the merits panel.

## II.

### A.

D.B. argues that the trial court abused its discretion in admitting other acts evidence consisting of A.J.C.'s testimony describing the shower incident. D.B. also contends that this issue is not waived for his failure to include it in his initial Rule 1925(b) statement or in his supplemental statement and this Court should review it on the merits.

We first address D.B.'s contention that he did not waive his Rule 404(b) claim. Rule 1925(b) provides: "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). Additionally, it is an appellant's responsibility to complete the certified record on appeal. **See Commonwealth v. Bongiorno**, 905 A.2d 998, 1000 (Pa. Super. 2006) (*en banc*).

In this case, the trial court did not address D.B.'s other acts claim in its opinion, as the only issues raised in his Rule 1925(b) statements challenged the sufficiency and weight of the evidence. Although this Court provided D.B. with an opportunity to augment his Rule 1925(b) statement when he obtained new counsel, the supplemental statement merely reiterated his original claims. In his appellate brief, D.B. generally points to the lag in time between the filing of the initial statement of errors and appointment of new counsel as the reason for the deficiency. Compounding this issue is the absence from the record of the notes of testimony from the motion *in limine* litigating admission of the prior acts evidence. Although D.B. maintains he ordered the notes on November 5, 2020, the Philadelphia Court Reporter's Office has no record of that order. In light of these circumstances, we agree with the Commonwealth that D.B.'s Rule 404(b) claim is waived.

**B.**

Moreover, even if it were not waived, D.B.'s argument would not merit relief.[6]

> When ruling upon the admissibility of evidence under the common-plan exception, the trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive:
>
> Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. . . . Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

**Saez**, **supra** at 180 (citation omitted).

Instantly, A.J.C.'s testimony that D.B. watched her while she showered demonstrated his common plan, scheme or design in acting in a sexually inappropriate manner towards the young daughters of his live-in girlfriend while she was at work and they were in his care. Further, the instances of

---

[6] An evidentiary abuse-of-discretion standard of review applies to a trial court's ruling on a motion *in limine*. **See Commonwealth v. Saez**, 225 A.3d 169, 177 (Pa. Super. 2019), *appeal denied*, 234 A.3d 407 (Pa. 2020).

improper conduct towards the sisters took place during the same time period in D.B.'s home. A.J.C.'s testimony also supported S.J.C.'s credibility, which the defense had attempted to undermine by suggesting that she did not get along with D.B. before she reported the abuse.

The trial court also issued the following jury instruction on the limited use of the Rule 404(b) evidence:

> You have heard evidence tending to prove that the defendant was guilty of improper conduct for which he is not on trial. I'm speaking of the testimony to the effect that he watched [A.J.C.] in the shower on one occasion. This evidence is before you for a limited purpose and that's for the purpose of tending to show a common plan, scheme, or design of the defendant and to rebut any claims of fabrication. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or a criminal tendency for which you might be inclined to infer guilt.

(N.T. Trial, 10/04/18, at 12).

This cautionary instruction properly informed the jury of the narrow purpose for the evidence and limited any prejudicial effect of A.J.C.'s testimony, as jurors are presumed to follow the court's instructions. **See Commonwealth v. Rose**, 172 A.3d 1121, 1131 (Pa. Super. 2017); **see also Commonwealth v. Hicks**, 156 A.3d 1114, 1129 (Pa. 2017) (limiting instructions weigh in favor of upholding admission of other acts evidence). Accordingly, D.B.'s other acts evidence claim would lack merit, even if it were not waived.

**III**.

D.B. next challenges the sufficiency of the evidence[7] supporting his conviction of aggravated indecent assault of a child.  D.B. disputes the element of penetration because S.J.C. did not specifically testify at trial that he penetrated her genitals or anus.  D.B. points to instances in her testimony describing various memories of the abuse where his hands or penis remained outside of her vagina or butt.

A defendant is guilty of aggravated indecent assault of a child if he "engages in penetration, however slight, of the genitals or anus of a

_____

[7]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered.  Finally, the trier-of-fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Widger*, 237 A.3d 1151, 1156 (Pa. Super. 2020) (citation omitted).

complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures" and the complainant is less than thirteen years old. 18 Pa.C.S. § 3125(a)(7), (b). "[D]igital penetration of the genitals or anus is sufficient to satisfy the crime of aggravated indecent assault." ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1233 (Pa. Super. 2005) (citation omitted).

Instantly, Grandmother gave a painstaking account of S.J.C.'s description of D.B.'s pattern of abuse. When Grandmother specifically questioned her granddaughter about intercourse, S.J.C. plainly reported that D.B. tried to put his penis in her butt, that he stopped only because it was too painful and he then ejaculated. (***See*** N.T. Trial, 10/02/18, at 131). Additionally, Dr. Green-Lee testified that S.J.C. informed her that D.B. "penetrated her vagina with his fingers." (N.T. Trial, 10/03/18, at 10). L.C. and Dr. Green-Lee described S.J.C.'s emotional state upon disclosure as extremely upset, sad and visibly shaken and S.J.C. appeared to be in a daze and in physical pain. (***See*** N.T. Trial, 10/02/18, at 130-31; ***see also*** N.T. Trial, 10/03/18, at 7-8).

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to support D.B.'s conviction of aggravated indecent assault of a child. The detailed accounts of his extensive abuse of S.J.C. were clearly sufficient to establish the element of penetration.

The jury, as fact-finder, heard and weighed the testimony and was free to credit that indicating D.B. penetrated S.J.C.'s vagina with his fingers and her anus with his penis. D.B.'s sufficiency claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/21